NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1277

SUSAN LEDOUX

vs.

BRISTOL COMMUNITY COLLEGE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After the plaintiff, Susan Ledoux, prevailed on certain employment-related claims against the defendant, Bristol Community College (BCC), a judge of the Superior Court ordered BCC to hire her in a specific position. BCC appealed from the judgment[1] and petitioned a single justice of this court for a stay of the judgment pending the appeal. The single justice denied the motion and BCC now appeals from the ruling of the single justice, pursuant to Mass. R. A. P. 6, as appearing in 494 Mass. 1601 (2024). We affirm.

Background. We briefly summarize the procedural history of the case and the facts as the jury could have found them,

---

[1] The appeal from the judgment is not before this panel.

reserving certain facts for later discussion. The plaintiff was employed by BCC from 1990 to 2010. From 1990 to 1997, she worked as a security officer. In 1997, she was promoted to campus police officer (CPO). In 2006, she was promoted to sergeant. In January 2010, the plaintiff filed a complaint with the Massachusetts Commission Against Discrimination charging BCC with sexual harassment and unlawful gender discrimination. Following a threat by a human resources employee to fire her unless she rescinded her complaint, the plaintiff suffered a stress-induced seizure and took medical leave.

In August 2010, the plaintiff attempted to return to work. The defendant terminated her employment on the ground that she had failed to provide proper medical documentation of her recovery. In 2014, an arbitrator upheld that termination under the collective bargaining agreement (CBA) governing the plaintiff's employment.[2]

In August 2012, the plaintiff brought an action against BCC alleging gender discrimination and sexual harassment under the

---

[2] The arbitration award was confirmed by a judge of the Superior Court, and subsequently that judgment was affirmed by a panel of this court. American Fed'n of State, County & Mun. Employees, Council 93 v. Board of Higher Educ., 89 Mass. App. Ct. 1134 (2016).

2

Massachusetts antidiscrimination statute, G. L. c. 151B.  A jury found for the plaintiff on both claims and awarded damages.[3]

In January 2016, the plaintiff applied for a position at BCC as a CPO.  She was the only applicant who had previously worked for BCC.  Her application was rejected at the screening stage for the purported reason that she lied on her resume, and another applicant was hired instead.[4]  The plaintiff brought this action against BCC alleging that it had violated the hiring preference required by the workers' compensation act, G. L. c. 152, § 75A, and had retaliated against her in violation of G. L. c. 151B, § 4.  A jury, finding that the reason given for rejecting the plaintiff's application was pretextual, found for the plaintiff on both claims.

On May 16, 2024, a judgment for equitable relief entered ordering the defendant to offer the plaintiff a "suitable job" as required by G. L. c. 152, § 75A, and to submit a status report within thirty days specifying how it proposed to comply with the judgment.  On June 17, 2024, BCC submitted a status

---

[3] The defendant appealed from the ensuing judgment.  A panel of this court affirmed the judgment awarding punitive and compensatory damages, but vacated the award of front and back pay.  Ledoux, v. Bristol Community College, 96 Mass. App. Ct. 1108 (2019).

[4] A jury later found that the plaintiff was at least as qualified for the position as any other candidate.

report requesting a stay pending appeal of the judgment ordering it to provide the plaintiff with a "suitable job."

On July 31, 2024, finding that BCC had failed to specify how it proposed to comply with the order, the judge denied the motion for a stay and ordered a hearing to review BCC's compliance with his order. At that hearing in August 2024, the judge found that the job of "campus police officer" (with some modifications) was the most suitable for the plaintiff.

On September 3, 2024, an amended judgment for equitable relief (judgment) entered ordering BCC to grant the plaintiff a job as a CPO within thirty days. The judgment entitled the plaintiff to the usual pay and benefits accompanying a "CPO-1" position. However, until the plaintiff obtained the required certifications imposed by the Massachusetts Peace Officer Standards and Training (POST) Commission, G. L. c. 6E, § 2, and the Massachusetts Municipal Police Training Committee, G. L. c. 6, § 116, the judgment limited the plaintiff's employment duties to those of a civilian employee of a police department of a public university or college and withheld the power to make arrests or carry a firearm. The judgment required the plaintiff to exercise reasonable efforts and good faith in obtaining these certifications. For purposes other than damages for lost wages and employment benefits, the judgment established the plaintiff's date of rehire nunc pro tunc as February 29, 2016,

4

the date on which BCC should have rehired the plaintiff.  The judgment operates as a permanent injunction and requires court approval of any adverse alterations to the plaintiff's position, including termination, suspension, or pay reduction.

On September 13, 2024, BCC filed a motion on an emergency basis to alter or amend the judgment's deadline for compliance and a notice of intent to file a motion to alter or amend the judgment.  One week later, the judge stayed the judgment pending resolution of the substantive motion to alter or amend.  On October 8, 2024, BCC filed its motion and on October 15, the judge denied the motion but stayed the deadline for compliance until October 28, to give BCC an opportunity to seek relief from a single justice of the Appeals Court.  On October 24, 2024, the defendant filed a motion to stay pending appeal with a single justice of this court, pursuant to Mass. R. A. P. 6 (a).[5]  On October 28, 2024, the single justice denied BCC's motion on the grounds that BCC had not demonstrated a likelihood of success on the merits.  BCC appealed.

Discussion.  1.  Standard of review.  An appellant seeking a stay pending appeal ordinarily must demonstrate "(1) the likelihood of appellant's success on the merits; (2) the

---

[5] The defendant filed a full appeal on the merits, including an appeal of the judgment at issue in this case, on September 30, 2024.  That appeal is not before us.

likelihood of irreparable harm to appellant if the court denies the stay; (3) the absence of substantial harm to other parties if the stay issues; and (4) the absence of harm to the public interest from granting the stay" (citation omitted).  C.E. v. J.E., 472 Mass. 1016, 1017 (2015).  The first factor requires the appellant to "show that there is at least one appellate issue of sufficient heft that would give an appellate court pause."  Commonwealth v. Nash, 486 Mass. 394, 404 (2020).  Failure to make that showing is fatal to a motion to stay.  See C.E., supra.

"The appellate court's role is to review the single justice's ruling [on a motion to stay] for error of law or abuse of discretion.  The appellate court does not exercise its own independent discretion to evaluate the request for a stay." (Citation omitted.)  Nash, 486 Mass. at 412.  However, because the determination of likelihood of success on the merits "involves a 'pure question of law or legal judgment,' the single justice's decision on this factor receives no deference from a reviewing court."  Commonwealth v. Kalila, 493 Mass. 636, 642 (2024), quoting Commonwealth v. Allen, 378 Mass. 489, 498 (1979).

2.  Likelihood of success on merits.  a.  General Laws c. 6E, § 4 (g).  The defendant argues that the plaintiff cannot be appointed as a CPO because G. L. c. 6E, § 4 (g), enacted

6

while this litigation was pending, prohibits an "agency [from] appoint[ing] or employ[ing] a person as a law enforcement officer unless the person is certified by the [POST] commission."  See St. 2020, c. 253, § 30.  Since the plaintiff has not completed the steps for POST certification, BCC contends that it is legally prohibited from hiring her.  See 550 Code Mass. Regs. §§ 3.00 (2025); 555 Code Mass. Regs. §§ 9.00 (2025).[6] We do not read the judge's order as a substitute for POST certification.

The POST commission has issued guidance on the construction of G. L. c. 6E, clarifying its understanding that the term "law enforcement officer," as defined in G. L. c. 6E, § 1, is limited to full-fledged police officers and other officers who carry weapons or have the power to make arrests.  See Massachusetts Peace Officer Standards and Training Commission, Construction of Scope of Chapter 6E of the Massachusetts General Laws (Apr. 4, 2022).

Although the judgment facially requires BCC to grant the plaintiff a job as a "campus police officer," in substance it initially requires only that BCC grant her a job as an institutional security officer (ISO) with special pay and

_____

[6] We cite to the version of the regulations currently in effect.

7

status.[7]  Until the plaintiff receives the necessary certifications to exercise police powers, the judgment expressly withholds from her the power to make arrests or carry a firearm on duty.  The plaintiff's employment as a "law enforcement officer" is thereby conditioned on her becoming certified by POST.  The judgment does not run afoul of the prohibition contained in G. L. c. 6E, § 4 (g).

b.  Workers' compensation hiring preference statute.  i. Order's consistency with CBA.  The defendant contends that the judgment is inconsistent with the applicable CBA because it requires BCC to obtain approval from the court before taking adverse employment actions against the plaintiff and to compensate the plaintiff at the pay grade for a CPO while she performs the lesser duties of an ISO, whereas the CBA contains its own provisions governing dispute resolution procedures and pay scale.  The defendant argues that the workers' compensation hiring preference statute, G. L. c. 152, § 75A, "prohibits the court from issuing an order inconsistent with an applicable CBA."  This argument lacks merit because it is not plausibly grounded in the statute.  Section 75A provides that

> "Any person who has lost a job as a result of an injury
> compensable under this chapter shall be given preference in

---

[7] The defendant apparently concedes that an ISO would not be subject to POST requirements when it argues that "[t]he order could be modified to avoid these statutory violations by requiring BCC to hire Ledoux as an ISO."

hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available. . . . An employer found to have violated this section shall be exclusively liable to pay to the employee lost wages, shall grant the employee a suitable job, and shall reimburse . . . reasonable attorney fees incurred in the protection of rights granted by this section . . . .

"In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement . . . , the collective bargaining agreement . . . shall prevail."

Section 75A "define[s] the rights of an employee such as the plaintiff and the relief available when those rights are violated." Federici v. Mansfield Credit Union, 399 Mass. 592, 597 (1987). Here, the judge's order sought to secure the plaintiff's "rights" under the statute (hiring preference) by providing relief in the form of lost wages, suitable job, and attorney's fees. When the applicable CBA does not conflict with the statutory right to a hiring preference, nothing in the statute constrains the court's equitable power to provide a plaintiff relief in the form of a suitable job. See Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1), 424 Mass. 430, 463 (1997) ("A court with equity jurisdiction has broad and flexible powers to fashion remedies").

For similar reasons, we disagree with the defendant's public policy argument. The defendant contends that the

9

judgment contravenes public policy favoring arbitration and collective bargaining. While arbitration has been considered an "appropriate and effective means to resolve labor disputes," School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003), the defendant's own actions -- discriminating against the plaintiff, violating the hiring preference, and failing to comply with the initial order to propose a suitable job -- contravened public policy and necessitated the court's equitable intervention in the first place.

ii. Additional challenges. The defendant makes three additional arguments that it is likely to succeed on the merits in challenging the judgment on the workers' compensation hiring preference claim underlying the judgment. None of these arguments bear the requisite likelihood of success.

First, BCC contends that the court erred in denying BCC's motion for judgment notwithstanding the verdict (judgment n.o.v.) because the CBA sets forth specific hiring criteria that are allegedly inconsistent with the hiring preference in G. L. c. 152, § 75A, such that the plaintiff was not entitled to the latter.

However, article 9 of the CBA provides that the CBA shall not be construed to restrict the rights of employees under the Massachusetts General Laws. The only way to reconcile that CBA

10

provision with the right to a hiring preference set forth in § 75A is to read the five criteria for candidate selection contained in article 19 of the CBA as a nonexhaustive list that incorporates § 75A's preference. As the judge detailed in his order denying BCC's motion for judgment n.o.v., this can be accomplished in a manner that is faithful to both the CBA and § 75A. Therefore, the CBA did not override the plaintiff's right to a hiring preference under § 75A.

Second, BCC argues that the judge erred in ruling that the plaintiff lost her job "as a result of a compensable injury," within the meaning of § 75A, despite "instructing the jury on the arbitrator's express finding to the contrary."

In fact, the arbitrator's finding that BCC lawfully terminated the plaintiff's employment for failure to demonstrate that she had recovered sufficiently such that she was able to return to work supports the judge's ruling. Since BCC knew that the plaintiff was receiving workers' compensation for her injury and terminated her for failing to prove she recovered from that same compensable injury, the plaintiff was terminated "as a result of [the] compensable injury." See, e.g., Barbuto v. Advantage Sales & Mktg., LLC, 477 Mass. 456, 462-463 (2017) (employee terminated for failing drug test, where failure is due

11

to medical marijuana prescribed for recognized disability, is terminated "because of" her disability).[8]

Finally, BCC contends that the judge erred by ordering the date of hire for the plaintiff nunc pro tunc to 2016, because § 75A "does not give the court the authority to require BCC to grant a suitable job retroactive to any past date." BCC provides no authority for its assertion that the court's equitable power to order a suitable job can never apply retroactively, notwithstanding the court's "broad and flexible powers to fashion [equitable] remedies." Judge Rotenberg Educ. Ctr., Inc., 424 Mass. at 463. Instead, BCC asserts that the retroactive order would unfairly exempt the plaintiff from certain training requirements contained in 550 Code Mass. Regs. §§ 3.03, and 3.04. We disagree.

The only relevant provisions in the cited sections that could depend on the plaintiff's date of rehire are the training requirements following interruptions in service, which vary based on how recently an officer has "actively performed police

---

[8] The only published decision cited by BCC in support of its position is Tunnicliff v. Department of Employment & Training, 35 Mass. App. Ct. 945 (1994). However, that case is inapposite because there, the plaintiff resigned shortly after receiving workers' compensation.

12

duties and functions."[9]  550 Code Mass. Regs. § 3.04.  Since the plaintiff, pursuant to the judgment, will not be able to perform "police duties and functions" for BCC until she is POST-certified, the formal backdating of her rehire date cannot affect these provisions.

Conclusion.  For the foregoing reasons, we determine that none of the issues presented by BCC are likely to succeed on the

---

[9] "Police Duties and Functions" include, among other things, "suppressing and preventing disturbances and disorder; . . . entering private premises to suppress breaches of the peace; stopping, arresting, processing, and confining suspects; searching individuals, and seizing evidence and contraband; [and] carrying a weapon."  550 Code Mass. Regs. § 3.02.

merits.  Accordingly, the single justice did not err in denying the defendant's motion to stay.[10],[11]

Order of single justice
  denying motion to stay
  affirmed.

By the Court (Hand, Hodgens &
  Tan, JJ.[12]),

Clerk

Entered:  January 23, 2026.

---

[10] In light of this conclusion, we need not address any of BCC's arguments concerning the other three factors.

[11] The plaintiff's request for attorney's fees in connection with this appeal is allowed.  See G. L. c. 152, § 75A.  In accordance with the procedure set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the plaintiff may file an application for appellate attorney's fees within fourteen days of this decision, along with supporting documentation, after which BCC shall have fourteen days within which to respond.

[12] The panelists are listed in order of seniority.